## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBJANI SARKAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MUBI, INC.,<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Debjani Sarkar ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action lawsuit against Mubi, Inc. ("Mubi" or "Defendant") for violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Plaintiff's claims arise from Mubi's practice of knowingly disclosing consumers personally identifiable information and viewed video media (collectively, "Personal Viewing Information") to unauthorized third parties, including Meta Platforms, Inc. ("Facebook") and Google ("Google"). Plaintiff's allegations are based on personal knowledge as to herself and her own acts and upon information and belief, including further investigation by counsel, as to all other matters.

## NATURE OF THE ACTION

1.      This is a consumer digital privacy class action complaint brought on behalf of all persons who subscribed to Mubi's streaming service and watched videos on mubi.com (the "Website") and/or corresponding app, both of which are owned and controlled by Mubi.

2.      Plaintiff brings this action in response to Defendant's practice of knowingly disclosing its subscribers' personally identifiable information—including a record of every video they requested and/or viewed—to unauthorized third parties without first complying with the VPPA's statutory requirements.

1

3.      Mubi's Website and app use first-party and third-party cookies, software development kits ("SDK"), pixels, Facebook's Business Tools, including Advanced Matching and Conversion API, Google Analytics, and related tracking tools to purposely track, record, and transmit its digital subscribers' interactions with mubi.com.

4.      Mubi knowingly installed and used these tools, and it controlled which data was transmitted to unrelated third parties.

5.      In conjunction with this, it purposefully and specifically chose to: (1) track and record consumers viewed video media, (2) disclose that information to Facebook[1] alongside its digital subscribers' individual Facebook ID and other persistent identifiers, and (3) did this without its users' knowledge or consent via surreptitious technology.

6.      Importantly, when Mubi transmitted Plaintiff's and other consumers' Personal Viewing Information—i.e., their persistent Facebook ID and viewed video content—that information was combined and sent to Facebook as one data point, thereby revealing the identity of the individual who requested or viewed a specific video.

7.      Because an FID is used to identify a specific individual and their corresponding Facebook account, Facebook or any ordinary person can use it to locate, access, and view a particular digital subscriber's Facebook profile, thereby revealing their identity. Put simply, the information Defendant shares with Facebook reveals each and every video a particular digital subscriber has requested or viewed.

8.      Plaintiff and consumers were harmed by Mubi's unlawful conduct, which deprives them of their right to privacy in their own homes, and the disclosures at issue reveal highly personal details regarding their unique video requests and viewing habits.

9.      Accordingly, Plaintiff brings this class action lawsuit for legal and equitable remedies to redress Mubi's ongoing practice of intentionally disclosing its digital subscribers'

---

[1] Notably, Facebook Pixel works in conjunction with its Conversion API tool and, as a result, Defendant transmits one copy of its digital subscribers' viewing information directly from its web server to Meta's web servers. Additional copies of this information are also communicated through the use of cookies.

Personal Viewing Information to Facebook, Google, and other unauthorized third-parties in knowing violation of VPPA.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Defendant because it transacts business in this District, has substantial aggregate contacts with this District, and maintains its principal place of business in this District at 215 Park Avenue South, Floor 12 in New York, New York.

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Video Privacy Protection Act, 18 U.S.C. § 2710.

12.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of Defendant.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391(c)(2) because Mubi resides in New York and is subject to personal jurisdiction in New York and Delaware. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in or emanated from this District.

## PARTIES

*Plaintiff*

14.     Plaintiff Debjani Sarkar ("Sarkar") is an adult citizen of California and is domiciled in Placentia, California.

15.     Plaintiff Sarkar has had a paid subscription to Mubi's streaming service for approximately two years, which she has used to request and view video content on a regular basis since that time.

16.     Throughout the duration of her Mubi subscription, Plaintiff Sarkar has maintained and used her Facebook account and Google email account, both of which she used and accessed on a regular basis from the same device that she used to request and view Mubi's video content.

17.     Pursuant to the systematic process described herein, her Personal Viewing Information was sent to unauthorized third parties—including Facebook and Google—without her knowledge or consent each time she requested and viewed Mubi's video content.

18.     Plaintiff Sarkar never gave Defendant express written consent to disclose her Personal Viewing Information to Facebook, Google, or any other unauthorized third party.

***Defendant***

19.     Mubi, Inc. is a privately owned entity that was incorporated in Delaware in 2007, and its principal office is 215 Park Avenue South FL 12, New York, New York 10003.

20.     Mubi, Inc. is a global streaming service, production company, and film distributer that owns and operates mubi.com and its corresponding app in throughout the United States.

21.     Defendant delivers and is in the business of delivering countless hours of video content to its digital subscribers through paid subscriptions.

22.     Plaintiff and Class Members paid Mubi for its streaming service, which costs $12.99 per month for a basic account and $17.99 per month for a MubiGo account that provides additional benefits.

23.     As of 2023, Mubi has approximately 15 million subscribers.[2]

---

[2] *See* https://help.mubi.com/article/22-what-makes-mubi-special#:~:text=Every%20single%20film%20is%20hand,more%20than%2015%20million%20members.(last visited November 16, 2023)

## FACTUAL ALLEGATIONS

### I.    Background of the Video Privacy Protection Act

24.    The VPPA prohibits the knowing disclosure of a consumer's video rental or sale records without the informed, written consent of the customer in a form "distinct and separate from any form setting forth other legal or financial obligations."

25.    Under the statute, the Court may award actual damages (but not less than liquidated damages of $2,500.00 per person), punitive damages, equitable relief, and attorney's fees.

26.    The VPPA was initially passed in 1988 for the express purpose of protecting the privacy of individuals' and their families' video rental, purchase and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

27.    Senators expressed concern and outrage over the non-consensual disclosure of consumers' video rental histories, describing the practice as a "pervasive form of surveillance" that improperly invades the lives of private citizens.[3]

28.    The personal nature of such information, and the need to protect it from disclosure, is the inspiration of the statute: "[t]hese activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." 134 Cong. Rec. S5399 (May 10, 1988).

---

[3] As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon and Leahy, respectively). In proposing the Video and Library Privacy Protection Act (later codified as the VPPA), Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988).

29.     The importance of legislation like the VPPA is more pronounced than ever before because we live in the age of data mining wherein every company has an incentive to intrude upon the private lives of consumers and monetize their data.

30.     Senator Leahy emphasized this at a recent Senate Judiciary Committee meeting, explaining that: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[4]

## II.     The VPPA is applicable because Mubi is a Video Tape Service Provider, Plaintiff and Class Members are Consumers, and Mubi Knowingly Disclosed their Personal Viewing Information.

31.     Mubi provides video streaming services to millions of users through its website and app, and its primary business is the delivery of on-demand pre-recorded video content.

32.     Defendant monetizes this content and its platforms by restricting access to video content, and only individuals who register with Mubi are granted access to its video content.

33.     To subscribe to Defendant's services, at a minimum, individuals must create an online account and share their identifying information. To maintain a subscription and access videos past the free trial period, users must pay a monthly or yearly subscription fee.

34.     When subscribers request or view videos on Mubi's platforms, their Personal Viewing Information is transmitted to Facebook, Google, and other unauthorized third parties as a result of the tracking tools Mubi purposely installed and implemented on its website and app.

35.     Mubi controlled its website, app, and all the tracking technologies that it used to transmit its subscribers' Personal Viewing Information to unauthorized parties.

---

[4] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology, and the Law, https://www.judiciary.senate.gov/committee-activity/hearings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century (last accessed November 6, 2023).

36.     Importantly, Facebook and Google would not have received Plaintiff's or other Class Members' Personal Viewing Information but for Defendant's decision to install and use Facebook's Business Tools, including the Facebook Pixel and Conversions API, Google Analytics, and other tracking technologies on its website and app.

37.     Moreover, Mubi controlled which data was tracked, recorded, and transmitted when its subscribers requested or viewed video content, and it could have anonymized the information and titles of the video content it hosts.

38.     Defendant's knowledge as to its conduct is evidenced by the fact that: (1) it chose to track its digital subscribers' interactions with mubi.com, including the videos they viewed; (2) it requested and installed lines of code that achieved this purpose; (3) it obtained the lines of code from Facebook and other third parties in order to achieve this purpose; and (4) it controlled the information that was tracked, recorded, and transmitted via mubi.com and the app.

A.     **Mubi Fails to Obtain Proper Consent from Digital Subscribers**

39.     Mubi was and is required to comply with the VPPA's statutory consent requirements before it shares subscribers' Personal Viewing Information with unrelated third parties, and a consumer's informed written consent is not valid unless it:

  (i)     is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;
  (ii)    at the election of the consumer—
         (I)     is given at the time the disclosure is sought; or
         (II)    is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and
  (iii)   the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election;[5]

---

[5] Video Privacy Protection Act, 18 U.S.C. § 2710(b)(2)(B).



40.     Mubi currently allows users to register for a free trial, after which they can maintain access to video content by becoming a paid subscriber.

41.     To become a paid Mubi subscriber, users must register by providing their email address, full name, street address, and credit card information.

42.     Digital subscribers also provide Mubi with their IP address, mobile devices identifiers, and other persistent identifiers.

43.     However, Mubi does not comply with the VPPA's statutory consent requirement during the registration process, nor does it comply when digital subscribers request or view video media on its platforms.

**B.** **Facebook Business Tools and the Tracking Pixels**

44. Facebook is a real identity platform, meaning that users are allowed only one account and must share the name they go by in everyday life. To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.

45. Businesses, such as Mubi, use Facebook's Business Tools to monitor and record their website and app visitors' devices and specific activities for marketing purposes.

46. More specifically, the Facebook pixel that Mubi installed and used tracked, recorded, and sent Facebook its subscribers' granular website activity, including the names of specific videos that subscribers requested and/or viewed each time they used their Mubi subscription. The information is not merely meta data.

47. Defendant's motivation for using the pixel and related Facebook Business Tools is simple—it financially benefits Mubi in the form of advertising and information services that Mubi would otherwise have to pay for.

48. The information Facebook receives identifies specific subscribers based on their unique and persistent Facebook IDs, which is sent to Facebook as one data point alongside the title of the video content the specific subscriber requested or viewed.

49. Notably, these marketing tools are not required in order for Mubi's website or app to function properly. Even if it finds the tools helpful, it could have used them in a manner that does not revealing its subscribers' Personal Viewing Information.

50. Any ordinary person who comes into possession of a Facebook ID can easily use that information to identify a particular individual and their corresponding Facebook profile, which contains additional information such as the user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts.

51. This information may reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

52.     Google also provides website owners with tracking tools and pixels for use in marketing, and it monetizes the data it receives by combining it with other data in its possessions.

53.     Like Facebook, Google has amassed millions of individual users who maintain Google email accounts and who provide Google with additional personal identifying information upon registration for those accounts.

54.     At a minimum, both Google and Facebook received Plaintiff's Personal Viewing Information as a result of Mubi's data sharing practices and the tools it installed on its platforms.

**C.     Mubi's Use of Tracking Tools**

55.     The Personal Viewing Information that Mubi shared with Facebook, Google, and other unauthorized third parties is not anonymized or redacted.

56.     When a subscriber requests or views a particular video, the specific title of the video is transmitted to Facebook alongside the subscriber's persistent and unique Facebook ID, thereby revealing their Personal Viewing Information to Facebook.

57.     However, subscribers are unaware of this because, amongst other things, Mubi's transmissions are completely invisible to ordinary subscribers' viewing its webpages. Figures 1, 2, and 4 are an attempt at lifting the curtain to show exactly what happens behind the scenes when Plaintiff and other subscribers request or views video content on Mubi's website.

58.     While Figure 1 shows what ordinary subscribers see on their screen as they use mubi.com, Figure 2 shows the invisible, behind the scenes transmissions taking place.



*Figure 1. The image above is a screenshot of the title screen that show what subscribers see when they request the film "Queens of the Qing Dynasty" via Mubi's streaming platform. The page does not contain any logos or indications that their button clicks are recorded and sent to Facebook.*

59.     The lines of text embedded in Figure 2 plainly show that Mubi sends Facebook the phrase "Queens of the Qing Dynasty" when the user requests or views that particular film.

60.     Figure 2 below provides a behind the scenes glimpse at what info Mubi's platform sends to www.facebook.com when the user views the video title "Queens of the Qing Dynasty" via mubi.com.

| ▼ Request Headers | |
|---|---|
| :authority: | www.facebook.com |
| :method: | GET |
| :path: | /tr/? |
| | id=1386672991571306&ev=PageView&dl=https%3A%2F%2Fmubi.com%2Fen%2Fus%2Ffilms%2Fqueens |
| | -of-the-qing- |
| | dynasty&rl=https%3A%2F%2Fmubi.com%2Fen%2Fus%2Fshowing&if=false&ts=1700469637894&sw=168 |
| | 0&sh=1050&ud[em]=25b532135c0f312cb1248dbd3c39cf5f603637d3ae7b0302db846c64674239d0&ud[sub |
| | scription_id]=9ce6b638fc617dfe8b0f4107cfe0b5cfb1aa285ae4809732ecf0543db460fd4d&ud[external_id]=1 |
| | bf2d79cb5a20e88575161b9d85624ef424fd33aa08f400531f5c5dc063f54e2&v=2.9.138&r=stable&ec=2&o=4 |
| | 126&fbp=fb.1.1700464365483.2011316300&ler=empty&it=1700469588231&coo=false&rqm=GET |
| :scheme: | https |
| Accept: | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| Accept-Encoding: | gzip, deflate, br |
| Accept-Language: | en-US,en;q=0.9 |
| Cookie: | sb=EviWYHBCNlrLUDYEWueWfxSg; datr=LUNgZOg84ndHbOPYTag6ZrMt; |
| | m_ls=%7B%22c%22%3A%7B%221%22%3A%22HCwAABbauA0W-J-n- |
| | QwTBRbU0cLc6bwtAA%22%2C%222%22%3A%22GSwVQBxMAAAWBBb2pN3GDBYAABV- |
| | HEwAABYlFoKl3cYMFgAAFigA%22%7D%2C%22d%22%3A%22fc345b4a-bf6d-4a6a-bee7- |
| | 98714caee2db%22%2C%22s%22%3A%220%22%2C%22u%22%3A%22e6t78u%22%7D; |
| | c_user=100001028527210; |
| | usida=eyJ2ZXIiOjEslmlkljoiQXJ6eHA1eWdnb3NubSlsInRpbWUiOjE2OTI5NDU1NzV9; |
| | xs=9%3ABTz0lxGSbYSRwA%3A2%3A1686943516%3A- |
| | 1%3A2699%3A3AAcVywZabO0qG2hrI2b9q48cnFok0YMdGYzgGhHxbwZKq; |
| | fr=1TitatQHQEgO1ATyY.AWW9ERyFvXc2y4uJb8my72PzAtY.BlP8jO.0W.AAA.0.0.BlP8jO.AWVN0Gaqif4 |
| Referer: | https://mubi.com/ |

*Figure 2. The image above is a screenshot of a network traffic report that was taken when a Mubi subscriber requested and viewed video content via Mubi's website, at which time the personal viewing information was transmitted to Facebook.*

61. The string of numbers contained in the fourth line of text within Figure 2 ("id=1386672991571306") corresponds to Mubi's own Facebook identifiers, thereby demonstrating it has indeed installed the Facebook pixel on its website.

62. The video viewer's Facebook ID was also transmitted to Facebook via mubi.com, and it is contained in the unredacted "c_user=" cookie six lines from the bottom in Figure 2.

63. Notably, "https://mubi.com" is listed as the "Referer," meaning it is indeed responsible for the transmission, the exact title of the viewed video was sent to Facebook (the text above includes the phrase "films%2Fqueens-of-the-qing-dynasty").

64. Additionally, Figure 3 below demonstrates that Facebook received Plaintiff's and Class Members' Personal Viewing Information via mubi.com and that the data was attributed to specific subscribers' unique Facebook accounts each time they requested video content.

12



*Figure 3. Screenshot taken from the user's personal Facebook account.*

65.     The image, which is a screenshot taken from a subscriber's personal Facebook account, plainly states: "mubi.com has shared this activity with us using Meta Business Tools."

66.     Even Facebook forbids the disclosures at issue in this complaint.

67.     More specifically, it requires its advertising partners, including Mubi, to comply with all applicable state and federal laws, such as the VPPA, and it further prohibits the transmission of sensitive data via its Business Tools.

68.     In addition to the Facebook pixel transmission shown in Figures 1-3 above, Mubi also transmits its subscribers' Personal Viewing Information to Facebook via Conversions API and SDK, and it sends the information to additional unauthorized third parties via Google Analytics and other tracking technologies installed on its website and app.

69.     Figure 4 below demonstrates that Mubi also sends its subscribers' Personal



*Figure 4.*

Viewing Information to Google via its Google Analytics tools, Google tag manager, DoubleClick Ads (which is owned by Google and used solely for advertising), and related tracking tools.

70.     The column to the left shows what the user sees before they watch the TV show *Lost* via Mubi's website, and the column to the right depicts the network traffic report, which demonstrates Mubi sent the user's Personal Viewing Information to "googleads.g.doubleclick.net."

**D.      Plaintiff's Experience and Mubi Subscription**

71.     Plaintiff Debjani Sarkar became a Mubi digital subscriber in or around November of 2021 by providing, among other information, her name, address, email address, IP address, device identifiers, and other persistent identifiers.

72.     In exchange for providing this information, Mubi gave her access to video content that would have otherwise been unavailable to her as a non-subscriber.

73.     Plaintiff pays Mubi for her digital subscription and access to its video content, and she also receives emails and other communications from Mubi in relation to her subscription.

74.     For the last two years, since she first became a subscriber, she has used her subscription to request and view video content on mubi.com.

75.     Plaintiff has had a Facebook account for several years, which she accesses and maintains on a regular basis, and which contains additional personal information and other personal details.

76.     During the relevant time period, Facebook received her Private Viewing History from Mubi, including the specific names of the videos she requested and viewed on its platforms.

77.     Plaintiff also received targeted advertisements which, based on their timing and specificity, are related to and are a direct result of Mubi's dissemination of her Personal Viewing Information via the Facebook Pixel, Conversions API, and related Facebook Business Tools.

78.     Plaintiff also has a Google email account that she uses on a regular basis and believes Mubi sent Google her Personal Viewing Information via Google Analytics installed on its website.

79.     She never consented, agreed, authorized, or otherwise permitted Mubi to disclose her Personal Viewing Information to Facebook, Google, or any other unrelated third parties.

80.     Likewise, she was not provided with any VPPA-complaint notice that Mubi would disclose her Personal Viewing Information—including the names of specific videos she viewed—to Facebook and Google, and she was not given any means of opting out of such disclosures.

81.     Plaintiff was unaware of, and unable to discover through reasonable diligence, Defendant's wrongful tracking practices until approximately November of 2023.

82.     Plaintiff is entitled by law to privacy in her Personal Viewing Information, and Mubi's improper disclosures of that information deprived her of the full set of benefits to which she was entitled to and paid for as a digital subscriber.

83.     Plaintiff wants to continue using the Mubi account she purchased, but she cannot request or view videos without putting herself at risk of additional future disclosures that violate her right to privacy in the video content she requests or views.

## CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this action individually and on behalf of all others similarly situated as a class action and pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(3), and/or (c)(4).

85.     **The United States Class is defined as:** All persons in the United States who: (1) registered for Mubi accounts**;** (2) viewed videos on Mubi's video streaming platforms; and (3) have a Facebook or Google account (the "United States Class").

86.     **The California Class is defined as:** All persons in the State of California who: (1) have Mubi accounts; (2) viewed videos on Mubi's video streaming platforms in the State of California; and (3) have a Facebook or Google account (the "California Class").

87.     Excluded from the Classes are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

88.     **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. Plaintiff believes that there are hundreds of thousands of Class Members widely dispersed throughout the United States. Class Members can be identified from Defendant's records and non-party Facebook's records.

16

89.     **Typicality.** Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and Class Members were harmed by the same wrongful conduct in that Defendant caused their Personal Viewing Information to be disclosed to Facebook without obtaining express written consent in a form that comports with the VPPA's statutory requirements. Plaintiff's claims are based on the same legal theories as the claims of other Class Members.

90.     **Adequacy.** Plaintiff will fairly and adequately protect and represent the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.

91.     **Commonality and Predominance.** Questions of law and fact common to the Class members predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct.  Questions of law and fact common to the Class include:

a.      whether Mubi collected its subscribers' PII;

b.      whether Mubi knowingly disclosed—and continues to disclose—its subscribers' Personal Viewing Information to Facebook, Google, TikTok, X, and any other unauthorized and unrelated third-party in violation of the VPPA and state statutes referenced herein;

c.      whether Mubi's disclosures were committed "knowingly" under the VPPA;

d.      whether subscribers' consented to Defendant's disclosure of their Personal Viewing Information in the manner required by 18 U.S.C. § 2710(b)(2)(B)—i.e. whether Mubi complied with each of the VPPA's statutory consent requirements;

e.      whether Mubi was unjustly enriched as a result of its disclosures; and

f.      whether Mubi's conduct violates other privacy statutes referenced herein.

92.     **Superiority.** Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.

93.     Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## TOLLING OF THE STATUTES OF LIMITATIONS

94.     All applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment of the facts alleged herein.

95.     Plaintiff and Class Members could not have reasonably discovered Defendant's practices until shortly before this class action litigation commenced because, amongst other things, Mubi's dissemination of their Personal Viewing Information and PII via its website and apps was and is invisible to ordinary consumers.

96.     Defendant was and remains under a continuing duty to disclose to Plaintiff and Class Members its practice of sharing Personal Viewing Information and PII with unauthorized third parties. As a result of the active concealment by Defendant, any and all applicable statutes of limitations have been tolled.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710**
**(On Behalf of Plaintiff & the Nationwide Class)**

97.     Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

98.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

99.     As defined in 18 U.S.C. §2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

100.     Defendant is a "video tape service provider" because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

101.     As defined in 18 U.S.C. §2710(a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

102.     Defendant knowingly caused its subscribers' Personal Viewing Information to be disclosed to Facebook, Google, and other unauthorized third parties.

103.     This information constitutes personally identifiable information under 18 U.S.C. §2710(a)(3) because it identified Plaintiff and Class Members as specific individuals who viewed or requested Mubi's video content, and it also reveals the specific video materials that a particular individual requested or viewed via Mubi's platforms.

104.     As defined in 18 U.S.C. §2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Plaintiff is a paid subscriber and is therefore a "consumer" within the meaning of the statute.

105.     As set forth in 18 U.S.C. §27109(b)(2)(B), "informed, written consent" must be: (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is

withdrawn by the consumer, whichever is sooner." Defendant failed to obtain informed, written consent under this definition.

106.    The VPPA also creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii), which requires video tape service providers to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Defendant failed to comply with this requirement because, in addition to failing to obtain consent in the first place, it also failed to provide an opportunity to opt out as required by the VPPA.

107.    Defendant knew that its disclosures identified Plaintiff and Class Members to third parties because, amongst other things, the tracking tools it used are designed for that specific purpose in order to aid future marketing efforts.

108.    Defendant also knew that Plaintiff's and Class Members' Personal Viewing Information was disclosed to unauthorized third parties because, *inter alia*, Defendant specifically chose the tracking tools described herein, installed them in its website and app, programmed its platforms such that the names of specific videos would be communicated and not redacted, and intended for unauthorized parties to receive the video content name and digital subscribers' specific ID.

109.    Defendant violated Plaintiff's and the Class Members' statutorily protected right to privacy in their video-watching habits by disclosing their Personal Viewing Information. *See* 18 U.S.C. § 2710(c).

110.    As a result of the above violations, Defendant is liable to the Plaintiff and other Class Members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Pursuant to the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

**SECOND CLAIM FOR RELIEF**
**Violation of New York General Business Law § 673**
**(On Behalf of Plaintiff and the Nationwide Class)**

111.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of Class Members against Mubi.

112.     Mubi "video tape service provider" because it creates, hosts, and delivers thousands of videos on its website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." New York General Business Law § 672(4). In particular, Defendant provides a library of audiovisual material for a monthly or annual fee. Defendant also uses the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

113.      Plaintiff and Class Members are "consumers" because they registered for subscriptions to mubi.com and paid to watch videos. New York General Business Law § 672(1).

114.     Mubi disclosed to a third party, Facebook, Plaintiff and Class members' personally identifiable information and the exact titles of specific videos they requested or viewed.

115.     Plaintiff and the Class members viewed videos using mubi.com.

116.     Mubi knowingly disclosed Plaintiff's PII because it used that data to build audiences on Meta and retarget her for its advertising campaigns.

117.     Plaintiff and the Class members did not provide Mubi with any form of consent—either written or otherwise—to disclose their PII or Personal Viewing Information to third parties when they registered for their Mubi subscriptions.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

118.     Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein and brings this claim individually and on behalf of the California Subclass.

119.    Defendant acted wrongfully by sharing its digital subscribers' Personal Viewing Information with unauthorized third parties without first obtaining proper consent pursuant to the VPPA's statutory requirements (in a standalone consent form).

120.    Plaintiff and Class Members' data has value, and Defendant profited from its improper use and dissemination.

121.    Defendant benefited to the detriment of Plaintiff and Class Members because it disregarded its digital subscribers' privacy rights for the sake of increasing its own revenue and profits.

122.    Defendant's retention of these ill-gotten gains is unjust and inequitable.

123.    Plaintiff and Class Members have no adequate remedy at law.

124.    Plaintiff, on behalf of herself and the Class, therefore seeks restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment. There is no adequate remedy at law that would provide redress to Plaintiff and the Class or ensure that Defendant will not deploy the same data practices in the future.

125.    Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

### FOURTH CLAIM FOR RELIEF
**Violation of California Civil Code § 1799.3**
**(By Plaintiff Sarkar on behalf of the California Class)**

126.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and bring this claim individually and on behalf of the California Subclass.

127.    Cal. Civ. Code § 1799.3(a) prohibits a "person providing video recording sales and rental services" from disclosing "any personal information or the contents of any record, including

sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

128.     Mubi is a "person providing video recording sales and rental services" because it offers consumers access to prerecorded video content for which subscribers pay to access.

129.     Defendant disclosed to, at least, Meta, TikTok, Google, and X, Plaintiff and the California Class members' personal information and/or the records of Plaintiff and California Class members' video viewing information.

130.     Plaintiff and the California Class members requested, obtained, and viewed video content provided via mubi.com.

131.     Defendant willfully disclosed Plaintiff's personal information because it used that data to build audiences on Facebook and other websites for the purpose of sending her targeted ads and retargeting her for its advertising campaigns.

132.     Plaintiff and California Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their personal information to third parties.

133.     On behalf of herself and the California Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the California Class by requiring Defendant to comply with Cal. Civ. Code §1799.3's requirements for protecting a consumer's personal information; (iii) statutory damages of $500 for each violation of the Cal. Civ. Code §1799.3 pursuant to Cal. Civ. Code §1799.3(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

**FIFTH CLAIM FOR RELIEF**
**Violation of the Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(By Plaintiff Sarkar on behalf of the California Class)**

134. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and bring this claim individually and on behalf of the California Subclass.

135. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

136. Mubi engaged in unlawful business practices in connection with its disclosure of Plaintiff's and California Class members' Personal Viewing Information.

137. Mubi's acts, omissions, and conduct constitute "business practices" within the meaning of the UCL.

138. Mubi violated the "unlawful" prong of the UCL by violating, inter alia, Plaintiff's and Class Members' right to privacy in the video content they request or watch, state and federal statutes including the VPPA, Cal. Civ. Code § 1799.3(a), and state consumer protection statutes.

139. Mubi's acts, omissions, and conduct also violate the unfair prong of the UCL because those acts, omissions, and conduct, as alleged therein, offended public policy (including the federal and state privacy statutes and state consumer protection statutes) and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class Members.

140. The harm caused by the Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests other than Defendant's conduct described therein.

141.    As a result of Mubi's violations of the UCL, Plaintiff and Class Members are entitled to injunctive relief. This is particularly true since Mubi's dissemination of its subscribers' information is ongoing.

142.    Plaintiff has paid Mubi for her subscription, she obtained that subscription specifically for the purpose of watching video content on Mubi's platform, and she wants to continue using her Mubi subscription for that purpose, but she cannot do so without subjecting herself to additional unlawful disclosures by Mubi.

143.    Blocking third-party cookies is not a sufficient means of preventing future unlawful disseminations of Plaintiff's Personal Viewing Information because, in addition to tracking pixels, Mubi's website contains additional tools—such as Facebook's Conversions API feature—which facilitates server to server communications. This second transmission occurs in addition to the transmission that is sent via the Facebook pixel.

144.    As result of Defendant's violations of the UCL, Plaintiffs and Class Members have suffered injury in fact and lost money or property, including but not limited to payments to Defendant for services and/or other valuable consideration, e.g., access to their private and personal data.

145.    Plaintiff and Class Members would not have used Mubi's services, or would have paid substantially less for them, if they had known that Mubi discloses their sensitive and confidential information each and every time they request or view video content on its platform.

146.    The unauthorized access to Plaintiff's and Class Members' private and personal data also has diminished the value of that information.

147.    In the alternative to those claims seeking remedies at law, Plaintiff and California Class Members allege that there is no plain, adequate, and complete remedy that exists at law to address Mubi's unlawful and unfair business practices.

148.    Therefore, Plaintiff and California Class members are entitled to equitable relief to restore them to the position they would have been in had Mubi not engaged in unfair competition, including an order enjoining Mubi's wrongful conduct, restitution, and disgorgement of all profits paid to Mubi because of its unlawful and unfair practices.

## RELIEF REQUESTED

149.    Plaintiff, Plaintiff seeks a judgement against Mubi, individually and on behalf of all others similarly situated, as follows:

a.   For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the United States Class and the California Class, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

b.   For an order declaring that Mubi's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.   For Defendant to pay $2,500.00 to Plaintiff and each Class Member, as provided by the VPPA, 18 U.S.C. § 2710(c)(2)(A);

e.   For punitive damages, as warranted, in an amount to be determined at trial;

f.   For prejudgment interest on all amounts awarded;

g.   For an order of restitution and all other forms of equitable monetary relief; and

h.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and the proposed Class, demands a trial by jury on all issues so triable.


Dated: December 12, 2023                    Respectfully submitted,

                                            */s/      Randi Kassan*
                                            Randi Kassan
                                            **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
                                            100 Garden City Plaza, Suite 500
                                            Garden City, NY 11530
                                            Ph: 516-741-5600
                                            Fx: 516-741-0128